UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

DEVON BROWN,

                    Petitioner,              10 Civ. 7605 (RWS)

     -against                                OPINION

WILLIAM LEE, Superintendent, Clinton
Correctional Facility

                    Respondent.

-----------------------------------------X


**Sweet, D.J.**


          On October 4, 2010, Devon Brown ("Brown" or

"Petitioner") filed this action pursuant to 28 U.S.C. § 2254 for

a writ of habeas corpus to challenge his allegedly

unconstitutional criminal conviction.  For the reasons stated

below, that petition is denied.


**Summary of Facts and Prior Proceedings**

          In January 2004, police initiated a long-term

investigation to address a rise in violent crime in the Edenwald

Housing Project in Bronx County.  Sergeant Marco Trujillio

1

("Trujillio"), a fifteen year veteran of the New York City
Police Department, was assigned to the investigation and
instructed to purchase narcotics in an undercover capacity.
Detective Anthony Gonzalez and Sergeant Daniel VonDollen
participated in the investigation as part of a field team that
monitored and recorded Sergeant Trujillio's activities.  Police
developed a confidential informant to introduce the undercover
Trujillio to persons of interest.  According to the Government,
prior intelligence revealed that Petitioner was a person of
interest.  On February 19, 2004, Sergeant Trujillio observed
Petitioner while undercover but did not meet him. Thereafter,
Petitioner sold drugs to Trujillio on six occasions (February
21, 2004; February 28, 2004; March 2, 2004; March 9, 2004; March
11, 2004; and March 18, 2004).

By an indictment 2923/2004, filed on June 28, 2004, a
Bronx County Grand Jury charged that Petitioner and eighteen co-
defendants committed 100 offenses.  Petitioner was named in 22
counts.  On October 2, 2006, after two mistrials, Petitioner was
convicted by jury of six counts of the criminal sale of
narcotics ranging in severity from the first to the third
degree.  He was sentenced to seventeen years to life for the

first degree conviction, eight years to life for the second degree conviction, and five to ten years for each of the four third-degree convictions.

At trial, Sergeant Trujillio, Detective Gonzalez, and Sergeant VonDollen testified for the Government.  Also, audio and video tape recordings of Petitioner's transactions with Trujillio were admitted at trial after authentication. Petitioner, on the other hand, testified that he first met Sergeant Trujillio on February 19, not February 21, 2004. Although he agreed with Sergeant Trujillio's testimony that the first drug sale occurred on February 21, Petitioner testified that the sale was prearranged.

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, First Department.  On appeal, Petitioner argued that the Court had issued incorrect jury instructions on the issue of agency and that the prosecutor had acted improperly by misstating the law of agency, bolstering the testimony of prosecution witnesses, and intentionally attempting to expose Petitioner's previous incarceration.

3

The Appellate Division unanimously affirmed the judgment on June 3, 2008 in People v. Brown, 52 A.D.3d 204 (1st Dept. 2008).  The Court upheld the jury instructions regarding the agency defense, finding that the trial court had properly instructed the jury to consider whether Petitioner expected a benefit in return for his misconduct.  Id. at 205-06.  The Appellate Division noted that this was the only challenge to the jury instructions which was preserved for appeal, and that Petitioner had failed to preserve his prosecutorial misconduct claims.  Id. at 206.  In dicta, the appellate court noted that the prosecutor's alleged misconduct in bolstering a witness and failing to redact an audiotape was harmless.  Id.  On September 17, 2008, Petitioner's application for leave to appeal to the Court of Appeals was denied.  See People v. Brown, 11 N.Y.3d 786 (2008).

On June 30, 2008, Petitioner filed a motion for resentencing pursuant to the Rockefeller Drug Law Reform Act, amended Penal Law § 70.71.  The motion was granted on July 15, 2009, and Petitioner was resentenced to a determinate term of 17 years' imprisonment and five years' supervised release for the

sale of a controlled substance in the first degree and to a
determinate term of 8 years' imprisonment and five years'
supervised release for the sale of a controlled substance in the
second degree.  These sentences are to run concurrently with
each other and with Petitioner's prior sentences for sale of a
controlled substance in the third degree.  Petitioner filed an
appeal from this resentencing on July 24, 2009, but that appeal
was not perfected.

On April 21, 2009, Petitioner moved pursuant to NYCPL
§ 440 to vacate the judgment against him in state court,
alleging fraud by the prosecutor and failure by the trial court
to protect Petitioner's due process rights.  Petitioner also
asserted his innocence.

On March 22, 2010, the state trial court (the "NYCPL §
440 court") denied Petitioner's motion to vacate the judgment
against him.  It rejected Petitioner's claim that the prosecutor
allowed perjured testimony, as Petitioner had failed to raise
that issue on direct appeal.  The NYCPL § 440 court denied
Petitioner's claim that the prosecution had failed to turn over
material exculpatory evidence on the grounds that the records at

issue were Petitioner's own records which he already had in his possession and introduced at trial.  The NYCPL § 440 court denied Petitioner's claim that the trial court had failed to protect his due process rights, noting that the court was not required, sua sponte, to order the testing of properly authenticated audio and video tapes.  The court also rejected Petitioner's claim of innocence, citing a lack of evidence supporting Petitioner's contention.  On August 31, 2010, Petitioner's application for leave to appeal the rejection of his NYCPL § 440 motion to the Court of Appeals was denied.

Petitioner then filed the present petition for a writ of habeas corpus on October 5, 2010.  The petition was considered fully submitted after Petitioner filed his Traverse on May 2, 2011.

**Applicable Standard**

A federal court may grant a writ of habeas corpus if it determines that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"The phrase 'clearly established Federal law, as determined by the Supreme Court of United States' refers to 'the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision.'" Overton v. Newton, 295 F.3d 270, 275-76 (2d Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2002)).

A state court decision can be "contrary to" clearly established Supreme Court precedent where the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or where state court confronts a set of facts materially indistinguishable from those addressed by the Supreme Court and nevertheless arrives at a different result. See Williams, 529 U.S. at 405-06, 411-13; see also Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams, 529 U.S. at 405-06); Overton, 295 F.3d at 275 (citing Williams, 529 U.S. at 413).

With respect to the "unreasonable application" inquiry, a writ may issue "if the state court correctly identifies the governing legal principles from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 407-10); see Williams, 529 U.S. at 407-10, 413; Overton, 295 F.3d at 275 (citing Williams, 529 U.S. at 413).  In applying this standard, a "federal habeas court... should ask whether the state court's application of clearly established Federal law was objectively unreasonable." Williams, 529 U.S. at 409; see Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 409-10); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001) (citing Williams, 529 U.S. at 409).

Thus, as the Second Circuit noted in Jones v. Stinson, 229 F.3d 112 (2d Cir. 2000), a federal habeas application will be denied even in cases where the state court is incorrect, as long as the state court has not acted unreasonably.  See 229 F.3d at 119-21 (reversing the issuance of writ of habeas corpus because the Appellate Division's affirmation of the petitioner's conviction was not contrary to Supreme Court precedent and

8

because, even if it was incorrect, the Appellate Division's decision was objectively reasonable).

When assessing an application for a writ of habeas corpus, a federal court "must defer to state court findings of fact, mixed findings of fact and law, and conclusions of law." Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001) (citing 28 U.S.C. § 2254(d),(e)).  "A state court determination of a factual issue is... presumed to be correct... and is unreasonable only where the petitioner meets the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Overton, 295 F.3d at 275 (citing 28 U.S.C. § 2254(e)(1))(internal citations omitted).

## Discussion

Petitioner has pointed to four flaws in his criminal trial, all of which he claims are grounds to vacate the judgment against him.  First, he contends that the trial court, encouraged by the prosecution, gave inaccurate instructions to the jury on the issue of agency.  Second, he alleges prosecutorial misconduct based on the prosecutor's alleged

misinforming of the jury as to the agency defense, bolstering of her witness, and attempt to reveal that Petitioner had been previously incarcerated.  Third, he alleges that one of the prosecution's witnesses, Trujillio, falsified his testimony, and that the prosecution put Trujillio on the stand knowing that he would falsify his testimony and failed to hand over material exculpatory evidence.  Fourth, Petitioner alleges that the trial court erred in not ordering independent testing for authenticity of audio and video tapes admitted into evidence.  Petitioner also claims that he is actually innocent.

**Petitioner's Claim that the Trial Court Erred in its Jury Instruction Regarding the Agency Defense is Denied**

Petitioner asserts, as he did in state court on direct appeal, that the trial court incorrectly analyzed the law concerning the expectation of a benefit as related to the agency defense, and that this error led to Petitioner's conviction. Petitioner claims (1) that the trial court's jury instruction on agency was misleading and prejudicial, and (2) that the trial court's inclusion of language referring to an "expectation of benefit" in the agency charge was improper and prejudicial.

10

As noted above, the Appellate Division found that Petitioner's "sole preserved challenge to the court's agency charge was to the court's inclusion... of language calling upon the jury to consider whether [Petitioner] 'expected' a benefit," Brown, 52 A.D.3d at 205.  The Appellate Division also found that Petitioner "did not preserve any of his other challenges to the court's agency charge."  Id. at 206.

Following the Appellate Division's holding, it appears that Petitioner's general challenge to the trial court's instruction on agency is procedurally barred because the Appellate Division decision denying this claim rests on an independent and adequate state ground.  Federal habeas review of a claim is barred if a state court rests its judgment on an independent and adequate state ground, which includes the procedural default at issue here.  See Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997) (citing Coleman v. Thompson, 501 U.S. 722, 729-732, 750) (finding that, in the habeas context, the application of a procedural bar as an independent and adequate state ground is prudential rather than jurisdictional); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (citations omitted); Rivera v. Conway, 350 F. Supp. 2d 536, 544 (S.D.N.Y.

11

2004). "The doctrine of procedural default is based on considerations of comity and finality, and not on a jurisdictional limitation on the power of a federal court under 28 U.S.C. § 2254 to look beyond a state procedural default and consider the merits of a defaulted claim that asserts a constitutional violation." Spence v. Super., Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000). Led by the principles of comity and finality, the Supreme Court has held that "the doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law." Lambrix, 520 U.S. at 523 (citations omitted); Rivera, 350 F. Supp. 2d at 544. Thus, "[w]here a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default constitutes an adequate and independent state law ground for the state court decision." Pearson v. Greiner, No. 02 Civ. 10244, 2004 WL 2453929, at *7 (S.D.N.Y. Nov. 3, 2004).

A state law ground is independent if it is separate and distinct from federal law, or if it is the exclusive basis for the state court's holding. See Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999). A procedural bar is "adequate" if it is

based on a rule that is "firmly established and regularly follow by the state in question." Pearson, 2004 WL 2453929, at *9 (internal quotations and citation omitted).

Failure to preserve is a firmly established independent and adequate state ground that procedurally bars habeas review.  See, e.g., Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990) ("if a state appellate court refuses to review the merits of a criminal petitioner's constitutional error claim because of his failure to comply with [the] 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review") (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (failure to make objection at trial to jury charge constitutes procedural bar); Hernandez v. Leonardo, 931 F.2d 214, 216-17 (2d Cir. 1991) (failure to make objection at trial constitutes adequate procedural default under NYCPL § 470.05(2)).

State rules that are firmly established and regularly followed will not foreclose review of a federal claim where the particular application of the rule is "exorbitant."  Lee v.

Kemna, 534 U.S. 362, 376 (2002).  In Cotto, 331 F.3d at 240, the
Second Circuit adopted and summarized these considerations as
guidelines in evaluating "the state interest in a procedural
rule against the circumstances of a particular case."  Id.
(citing Lee, 534 U.S. at 381-85).  The three factors are as
follows: (1) whether the alleged procedural violation was
actually relied upon in the trial court, and whether perfect
compliance with the state rule would have changed the trial
court's decision; (2) whether state case law indicated that
compliance with the rule was demanded in the specific
circumstances presented; and (3) whether the petitioner had
"substantially complied" with the rule given "the realities of
trial," and whether demanding perfect compliance with the rule
would serve a legitimate governmental interest.  Id.

     The Appellate Division "actually relied" on the
procedural bar.  Preservation is a well established state
procedural bar that demands compliance, and, in this instance,
Petitioner did not comply with the rule.  In fact, defense
counsel sought and was granted the inclusion of language not
included in the New York Criminal Jury Instruction.  The
appellate court's finding stands even though it proceeded to

14

explain that it "found no basis for reversal," as an "alternative holding." Brown, 52 A.D.3d at 206. See Velazquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the federal claim").

Thus, in light of the Appellate Division's denial of his general claims against the jury instruction on an independent and adequate state ground, Petitioner cannot raise them now.

Petitioner also fails to show cause for the default and prejudice attributable thereto, "or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice," so as to lift the bar to federal habeas review. See Harris v. Reed, 489 U.S. 255, 262 (1989) (internal quotations and citations omitted); Murray v. Carrier, 477 U.S. 478, 485, 495 (1986) (citations omitted). Furthermore, given the Appellate Division's pronouncement that, even if it were to review the claim, it nonetheless would have found it meritless,

Petitioner cannot show actual prejudice arising from the procedural default.

Significantly, neither of Petitioner's claims against the jury charge is cognizable on habeas review because they do not present federal constitutional claims.  Petitioner contends that his general claim regarding the jury charge invokes his constitutional rights to due process and a fair trial, claiming that those rights were violated by the courts inclusion, in the jury charge, of several factors not specifically enumerated in the New York Criminal Jury Instructions.  However, jury charge claims are generally a matter of state law.  See Cupp v. Naughten, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."); United States ex. rel. Smith v. Montagne, 505 F.2d 1355, 1359 (2d Cir. 1974) (claim that jury instruction was incorrect as a matter of state law is not a basis for federal habeas relief) (citing Cupp, 414 U.S. at 146); DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir.

16

2004) (claim that justification charge was incorrect as a matter of state law not federal cognizable question); Gonzalez v. Cunningham, 670 F. Supp. 2d 254, 263 (S.D.N.Y. 2009) ("To be cognizable on habeas, a challenge to a jury charge must show not only that it is erroneous, but that it violates a federal right").

Petitioner has failed to establish a violation of his federal constitutional rights, and, as the Appellate Division found, both of Petitioner's claims regarding the jury instruction are not supported by New York law.  Under New York law, the "agency defense" provides that "'[o]ne who acts solely as the agent of his buyer cannot be convicted of the crime of selling narcotics.'"  People v. Chong, 45 N.Y.2d 64, 73 (1978) (quoting People v. Branch, 13 A.D.2d 714 (4th Dept. 1961)). "[T]he underlying theory of the agency defense in drug cases is that one who acts as procuring agent for the buyer alone is a principal or conspirator in the purchase rather than the sale of the contraband."  People v. Roche, 45 N.Y.2d 78, 82 (1978).  To be considered an agent, "a narcotics merchant must be a mere extension of the buyer"; that is, "[h]e may act to procure what the buyer wants because the buyer has asked him to do so, but

17

not out of any independent desire or inclination to promote the transaction." People v. Argibay, 45 N.Y.2d 45, 53-54 (1978).

Here, despite Petitioner's claim that he was an agent, he testified that he participated in the sales because he wanted a well-paying job in the criminal enterprise and was led to believe that he would earn that job through the selling of illegal drugs.  He was not paid for making the drug sales and did not directly ask for the job he sought.  The trial court instructed the jury that "there is no legal formula" for making the agency determination, but rather that the jurors "must rely on [their] own common sense and experience and consider all of the circumstances surrounding the transactions to determine whether the defendant was merely accommodating the buyer or whether he was himself interested in the sale." (Trial Trans. 671).  With regard to the factors that might guide the jury's determination, the court charged as follows:

> Now, I'm going to list for you some factors which you
> may wish to consider in your evaluation of the
> evidence:  Who initiated the transactions?  What was
> the relationship between the defendant and the buyer?
> Were the defendant and the buyer known to each other
> before any drug transaction?  How and to whom were
> payments for the drugs made?  Did the defendant act
> primarily, if not exclusively, for his own advantage?
> Did the defendant receive any profit or benefit from

18

the transactions or did he expect or request any
profit or benefit from the transactions?  If he did,
from whom did he receive, expect or request the
benefit?  What was the nature of the benefit - was it
incidental by nature of a tip or a token of
appreciation or was it substantial and in
consideration for the drugs?  Was the defendant
previously convicted of any other drug sale or had he
previously engaged in the sale of any controlled
substance?  Prior to the transactions with the buyer,
were the drugs in question controlled exclusively by a
person other than the defendant or not?  Did the
defendant say or do anything to promote the sales?
What was the amount of drugs involved in the
transactions?  What were the number of transactions
between the defendant and the buyer?  Did the
defendant deal with one or more than one drug
supplier?  You may consider these and any other
factors that you believe to be relevant to determine
whether the defendant acted solely as the agent of the
buyer.  The factors I have listed are suggested only
to illustrate what you might consider in making your
decision as to whether the defendant was acting solely
as an agent of the buyer or acting as a seller or
broker for the drug sale.  Now the attorneys have also
suggested other factors to you.  You should give the
factors whatever importance you deem appropriate in
light of all the evidence in the case.  You may
consider some factors to be more important than
others.  The value you give to each, if any, is up to
you.

(Trial Trans. 671-73).  Petitioner has not demonstrated that the

charge contained an incorrect legal standard.


          With regard to Petitioner's specific claim about the

court's inclusion of an "expected benefit" in the charge, the

Appellate Division held that this language properly instructed

the jury to consider whether defendant had expected a benefit because, if he had, he was not a mere agent of the buyer.  See Brown, 52 A.D.3d at 205-06 ("receipt of any substantial benefit, as opposed to a 'tip' or other incidental benefit, is inconsistent with the agency defense. ...  [Petitioner] testified that his hope of receiving a lucrative job from a person he believed to be an organized crime figure was, in [Petitioner]'s mind, a serious expectation that motivated his involvement in the drug sales.  Although the expected benefit was not part of the proceeds of the transactions, it was still inconsistent with the agency defense, whose purpose is to limit the liability of a person who helps another person obtain drugs primarily as 'a favor for a friend'..., rather than for economic reasons") (internal citations and quotations omitted).

Therefore, Petitioner's claims with regard to the jury instructions are denied.

**Petitioner's Claims of Prosecutorial Misconduct are Denied**

Petitioner next alleges, as he did in the Appellate Division, three bases for his claim that the prosecutor's

20

presentation of evidence, summation and cross-examination of
Petitioner were so egregious as to deprive him of a fair trial:
(1) the prosecutor misstated the law on agency during her
summation; (3) she impermissibly bolstered the People's
witnesses; and (3) the prosecutor intentionally attempted to
expose Petitioner's previous incarceration to the jury.

As held by the Appellate Division, Petitioner's
prosecutorial misconduct claims are procedurally barred.  The
Appellate Division's decision is not contrary to or an
unreasonable application of, clearly established United States
Supreme Court precedent.  See 28 U.S.C. § 2254(d).  The
Appellate Division found that Petitioner "did not preserve...
any of his prosecutorial misconduct claims." Brown, 52 A.D.3d
at 206.  Accordingly, Petitioner's claims challenging the
prosecutor's conduct are procedurally barred because the
Appellate Division decision denying these claims rests on
independent and adequate state grounds.  See Lambrix, 520 U.S.
at 522-23; Cotto, 331 F.3d at 238.  Further, as with
Petitioner's contentions regarding the jury instructions,
discussed supra, Petitioner cannot show actual prejudice
stemming from the procedural default, and the bar should not be

lifted.  See Velazquez, 898 F.2d at 9.  The Appellate Division
also found, as an alternative holding, no basis for reversal and
found, "[t]o the extent the prosecutor improperly bolstered a
witness's testimony and neglected to make a certain redaction
from an audiotape, those errors were harmless."  Brown, 52
A.D.3d at 206.  That alternative holding was neither contrary
to, nor an unreasonable application of, clearly established
United States Supreme Court precedent.  See 28 U.S.C. § 2254(d).
Petitioner has failed to establish that any of the Appellate
Division's findings were in error.

     The applicable "clearly established Supreme Court
precedent" governing claims of prosecutorial misconduct comes
from Donnelly v. DeChristoforo, 416 U.S. 637 (1974), Darden v.
Wainwright, 477 U.S. 168 (1986), United States v. Young, 470
U.S. 1 (1985), and Dunlop v. United States, 165 U.S. 486 (1897).
In order for a petitioner to make out a claim of constitutional
error on the ground of prosecutorial misconduct, "it is not
enough that the prosecutor's remarks were undesirable or even
universally condemned."  Darden, 477 U.S. at 181 (internal
quotations and citation omitted).  "The relevant question is
whether the prosecutor's comments 'so infected the trial with

22

unfairness as to make the resulting conviction a denial of due
process.'" Id. (quoting Donnelly, 416 U.S. at 643).  Comments
by the prosecutor in summation do not present grounds for
dismissal unless there is "substantial prejudice". See Gonzalez
v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (citing United
States v. Tutino, 883 F.2d 1125, 1136 (2d Cir. 1989), cert.
denied, 493 U.S. 1081 (1990); United States v. Nersesian, 824
F.2d 1294, 1327 (2d Cir. 1987), cert. denied, 484 U.S. 957
(1987)).  Indeed, the Second Circuit has held that it is a "rare
case[]" in which even improper summation comments will be deemed
so prejudicial as to support issuance of a writ of habeas
corpus.  See Floyd v. Meachum, 907 F.2d 347, 348 (2d Cir. 1990).
The Supreme Court has affirmed the principle that a prosecutor's
summation "must be examined within the context of the trial to
determine whether the prosecutor's behavior amounted to
prejudicial error." Young, 470 U.S. at 12.

Petitioner has not demonstrated that the prosecutor's
summation denied him due process.  Petitioner's first
contention, that the prosecutor misstated the law on agency
appears to relate primarily to the prosecutor's comment to the
jury that "while the defense wants to call it agency, I have

23

another name for it.  It's credibility.  You have to decide who
in this case is telling the truth."  (Trial Transcript 605).
Petitioner notes that the prosecutor alluded to this argument on
two additional occasions during her summation; at one point
stating, "I started by telling you that this is an issue of
credibility and that's what this is" (Trial Transcript 642), and
on another, "you've got to apply your common sense and you've
got to decide credibility" (Trial Transcript 645).  According to
Petitioner, these comments establish that the prosecution was
trying to sweep the agency issue under the rug.  Petitioner
further argues that the prosecutor misstated the law on agency
by arguing that Petitioner's expectation of a benefit negated
his agency defense.  Additionally, Petitioner claims that the
prosecutor confused the jury as to the meaning of agency by
arguing that the Petitioner was not an agent both because he did
not ask about a job and because he wanted a job.

The prosecutor's argument that the jury's agency
determination turned on its assessment of the credibility of the
witnesses was an accurate statement of the jury's task and a
fair response to Petitioner's own summation, which raised the
same issue.  (See Trial Transcript 580).  Defense Counsel also

24

questioned the credibility of the prosecution's witness, Trujillio, including a discussion of Trujillio's testimony at the first trial, his alleged lack of preparation for cross-examination, and his allegedly inconsistent answers.  (Trial Transcript 581-586).  The question of whether, as Trujillio testified, Petitioner was a drug seller, or, as Petitioner alleged, merely an agent, was a question of credibility for the jury which turned on the conflicting witness testimony.

Petitioner has not shown that the prosecutor directed the jury not to consider the agency defense or conveyed an inaccurate definition of the defense.  Rather, her comments regarding credibility consisted of a response to the testimony at trial and the commentary made by defense counsel on summation.  In this context, they were proper.  See Darden, 477 U.S. at 182 (no deprivation of a fair trial where "objectionable content was invited by or was responsive to the opening summation of the defense"); see also United States v. Ozsusamlar, 349 Fed. Appx. 610, 612 (2d Cir. 2009) (no prosecutorial misconduct where "[t]he prosecutor's comments in rebuttal summation were aimed at rebutting defense arguments"); Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007)

("statements during summation are permissible if they constitute a fair comment on the evidence at trial and reasonable inference therefrom, or a fair response to remarks made by the defense counsel during summation.") (internal quotations and citations omitted).

While the prosecutor did assert that Petitioner's testimony established that he expected a benefit, and thus, that he was not an agent (Trial Transcript 644), that argument was fair game based on Petitioner's own testimony at trial. Moreover, the prosecutor's argument responded to defense counsel's claim to the contrary during his summation.

Petitioner's argument that the prosecutor misstated the law on agency by commenting on the benefit Petitioner expected to receive in exchange for his participation in drug sales assumes that it was error for the court to have included that factor in its jury instruction in the first place, which it has been established it was not.

Petitioner's complaint that the prosecutor confused the jury by presenting alternative arguments in her summation

26

fails.  The prosecutor raised multiple arguments based on the
trial testimony for the jury's consideration and each accurately
conveyed why Petitioner could not have been an agent.  See
Osario, 496 F. Supp. 2d at 301.  Petitioner has not established
the impropriety of the prosecutor's arguments.

        Petitioner further contends that the prosecutor
impermissibly bolstered Trujillio's credibility by appealing to
reverence for the New York City Police Department and
assumptions of guilt toward the accused.  Petitioner cites the
prosecutor's claim that "if [Petitioner is] not a drug dealer,
why would [the undercover police officer] go after him?  Why
would the New York City Police Department, when there are plenty
of drug dealers we can go after, go after a non-drug dealer[?]
Does it make sense? It doesn't."  (Trial Transcript 608-09).
While the prosecutor's statements appear to give substance to
Petitioner's claims, they are taken out of context.  The
sentence immediately preceding the challenged commentary reveals
that the prosecutor made these remarks in response to defense
counsel's summation: "You know, [defense counsel] said in his
summation, there are a lot of people out there selling drugs."
(Trial Transcript 608).  Defense counsel made that argument

27

early in his summation, stating that he shared the jury's
distaste for drug dealers, and "I hope you will agree with me
that we want our government to send undercovers out to get the
drug sellers, but we don't want overreaching.  There are enough
people selling drugs to get someone that wasn't selling drugs."
(Trial Transcript 579).  In the context of the rest of the
trial, the prosecutor's challenged comments were fairly inferred
from the trial testimony and responsive to Petitioner's argument
on summation.

    Similarly, Petitioner's complaint regarding the
prosecutor's comment, that Trujillio "has been doing this a very
long time" and "[h]e knows what he is doing" (Trial Transcript
637), is taken out of context.  Those statements were made while
explaining the execution of an undercover operation, not in
support of Trujillio's credibility as a witness.  Regardless, in
light of defense counsel's attacks on Trujillio's credibility
and other admissible testimony about Trujillio's background, the
prosecutor's comments were proper and did not bolster the
credibility of the witness outside of what had been established
at trial.  See Darden, 477 U.S. at 181-82.  Thus, the Appellate
Division's holding that "[t]o the extent the prosecutor

28

improperly bolstered a witness's testimony..., [that] error[]
[was] harmless," Brown, 52 A.D.3d at 206, was in accordance with
Supreme Court precedent.  See Brecht v. Abrahamson, 507 U.S.
619, 637 (a constitutional error is harmless, for the purposes
of habeas review, unless it "'had substantial and injurious
effect or influence in determining the jury's verdict'")
(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

          Finally, Petitioner alleges that the prosecutor
intentionally sought to reveal his previous incarceration to the
jury on cross-examination and during summation.  During a
playback of an audiotape requested by the jury during
deliberations, the prosecutor neglected to turn down the volume
of the recording at a specific time, permitting the jury to hear
Petitioner say "I was in jail."  (Trial Transcript 731).
However, Petitioner has presented no evidence supporting his
contention that this act was intentional and substantially
prejudicial.  Defense counsel did not object until later in the
day.  The prosecutor expressed that the error was inadvertent in
her response to Petitioner's NYCPL § 330.30 motion, and the
trial court credited that assertion.  Furthermore, the jury was
already aware that Petitioner had one prior felony and two prior

misdemeanor convictions.  (Trial Transcript 43, 429-30).

Petitioner has not established that, in this context, hearing

the Petitioner tell Trujillio "I was in jail" was prejudicial to

him.  When Petitioner objected later in the day, the court

offered to give a curative instruction.  (Trial Transcript 732).

Petitioner declined the court's offer.

Moreover, by declining a cure, which the jury would be

presumed to follow (see Frances v. Franklin, 471 U.S. 307, 324,

n. 9 (1987)), Petitioner cannot now claim error.  Accordingly,

the Appellate Division's finding that "[t]o the extent the

prosecutor... neglected to make a certain redaction from an

audiotape, [that] error[] [was] harmless," Brown, 52 A.D.3d at

206, was not contrary to, or an unreasonable application of,

Supreme Court precedent.  See Brecht, 507 U.S. at 637.

Petitioner further argues that the prosecutor

committed misconduct by deliberately asking him during cross-

examination whether he had a job during the years she knew he

was incarcerated.  However, a review of the record reveals that

the prosecutor's line of questioning only established that

Petitioner had no job during those years and no reference was

made in the prosecutor's questions or Petitioner's answers to

his incarceration.  Therefore, Petitioner has not established

any prejudice arising from this exchange with the prosecutor.

Moreover, as the trial court observed, the prosecutor was

legitimately attempting to establish the Petitioner's employment

record, which showed no legitimate jobs, after the Petitioner

had put his employability directly at issue.  See Garbez v.

Greiner, No. 01 Civ. 9865, 2002 WL 1760960, at *11 (S.D.N.Y.

Jul. 30, 2002).


          In sum, Petitioner's claims of prosecutorial

misconduct are procedurally barred, and the Appellate Division's

alternative findings, that Petitioner's prosecutorial misconduct

claims provided "no basis for reversal" and that any potential

error was harmless, are not contrary to or an unreasonable

application of United States Supreme Court precedent, nor is it

based on an unreasonable application of the facts.


**Petitioner's Allegations that the Prosecution Knowingly
Presented Perjured Testimony and Failed to Turn Over Material
Exculpatory Evidence Fail**

          Petitioner claims, as he did in his NYCPL § 440

motion, that the judgment against him was procured by fraud on

31

behalf of the prosecution, in that they (a) allowed perjured testimony from a key witness, Trujillio, and (b) failed to turn over Petitioner's mobile phone records, allegedly resulting in Rosario and Brady violations.  These claims are procedurally barred in part, not cognizable on habeas review in part, and the NYCPL § 440 court's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Petitioner's claim that the prosecutor allowed Trujillio to give perjured testimony was denied by the NYCPL § 440 court pursuant to NYCPL § 440.10(2)(c) as a matter of law. The court found that there were sufficient facts in the record that would have permitted adequate review on direct appeal, and that Petitioner had not adequately explained his failure to raise this issue on direct appeal.  The denial of a NYCPL § 440 motion pursuant to NYCPL § 440.10(2)(c) is an independent and adequate state ground that procedurally bars habeas review.  See Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001) ("New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the claim on direct appeal.") (citing NYCPL § 440.10(2)(c)); Sherwood v. Cunningham,

No. 07 Civ. 6588, 2009 WL 790085, *8 (S.D.N.Y. Mar. 25, 2009)
(referring to NYCPL § 440.10(2)(c), "even if this Court were
willing to consider the argument that Sherwood's plea was
involuntary, the claim is procedurally barred"). As discussed
above, where the state court denied Petitioner's claim on an
independent and adequate state ground, Petitioner's claim is
procedurally barred from review.

In the alternative, as the NYCPL § 440 court held, the
testimony cited to by Petitioner in support of his perjured
testimony claim is little more than impeachment material, at
best, and does not establish any perjury by Trujillio, let alone
the prosecution's subornation of perjury.

Petitioner next claims that the prosecutor failed to
turn over Petitioner's phone records, and that this alleged
failure constituted a violation of both state law[1] and federal
law[2].

---

[1] People v. Rosario, 9 N.Y.2d 286 (1961) (the defense must be provided with the
statements of any witnesses whom the prosecution intend to call at trial
which relate to the subject matter of their testimony).

[2] Brady v. Maryland, 373 U.S. 83, 87 (1963) ("the suppression by the
prosecution of evidence favorable to the accused upon request violates due
process where the evidence is material either to guilt or to punishment...").

33

The NYCPL § 440 court denied Petitioner's claim
pursuant to NYCPL §§ 440.30 (1) and (4), finding that the
prosecution had no duty to turn over the Petitioner's own phone
records, of which the Petitioner was aware and to which he had
access.  The court noted that Petitioner introduced the records
into evidence at trial.

Petitioner's Rosario claim is not cognizable for this
Court's review because Rosario is grounded in the state's common
law and has no federal constitutional underpinning.  See Green
v. Artuz, 990 F. Supp. 267, 274 (S.D.N.Y. 1989) (citing Butler
v. Schubin, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), aff'd, 508
F.2d 837 (2d Cir. 1975); Morrison v. McClellan, 903 F. Supp.
428, 429 (E.D.N.Y. 1995)); Johnson v. Filion, 232 F. Supp. 2d
98, 100 (S.D.N.Y. 2002) (quoting Green, 990 F. Supp. at 274);
Butler, 376 F. Supp. at 1247.

Regarding the Brady portion of Petitioner's claim,
since Petitioner did in fact assert a constitutional claim in
state court, Petitioner is presumably now seeking habeas relief
from the state court's determination that there was no Brady

34

violation.   Reviewing the state court's determination, the state court properly applied "clearly established Supreme Court precedent," Brady, in reaching its decision.   28 U.S.C. § 2254(d).

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment. ..."   373 U.S. at 87.   Brady material is exculpatory evidence in the control of the prosecution or evidence which is material to the credibility of a prosecution witness whose testimony may be determinative of guilt or innocence.   See Id. at 87-88; Giglio v. United States, 405 U.S. 150, 153-54 (1972).

Petitioner's Brady claim lacks merit as Petitioner's own phone records are not Brady material.   Leka v. Portuondo, 257 F.3d 89, 100 (2001) ("'Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence'") (quoting United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982)); see also United States v. Payne, 63 F.3d 1200,

35

1208 (2d Cir. 1995) ("evidence is not considered to have been
suppressed within the meaning of the Brady doctrine if the
defendant or his attorney either knew, or should have known, of
the essential facts permitting him to take advantage of [that]
evidence") (internal quotations and citations omitted).

**Plaintiff's Allegation that the Court Failed to Safeguard His
Due Process Rights is Not Cognizable on Habeas Review**

In his NYCPL § 440 motion, Petitioner alleged that the
trial court failed to safeguard and protect his basic
fundamental rights of confrontation of the evidence and of the
charges by not independently testing the authenticity of the
audio and video tapes admitted into evidence.  Petitioner now
raises that same claim in his habeas petition.  Petitioner's
claim, however, is not cognizable on habeas review because it
fails to allege a federal constitutional claim and lacks merit.

At trial, audio and video tape presenting Trujillio's
numerous narcotics transactions with Petitioner were admitted
into evidence after authentication.  Petitioner alleges those
tapes had been tampered with and should have been independently
tested to establish authenticity.  Petitioner claims that he

36

informed defense counsel that the tapes should have been tested
independently and that counsel did not follow through on his
request.  According to Petitioner, the court then had a duty to
order the testing sua sponte to protect Petitioner's
constitutional rights.

The NYCPL § 440 court denied Petitioner's claim
pursuant to NYCPL §§ 440.30(4)(a) and (d), finding that
Petitioner failed to set forth any authority for the proposition
that the trial court was required, sua sponte, to order
independent testing for authenticity either before or after the
tapes were properly authenticated by the prosecution's witness
and admitted into evidence, and that Petitioner's claim of
evidence tampering was only made by the Petitioner, lacks
support from any other evidence, and is not, in all likelihood,
true.

Federal courts reviewing a habeas petition do not, as
a general matter, interfere with state court evidentiary rulings
made under state law.  See Estelle v. McGuire, 502 U.S. 62, 67-
68 (1991) ("[W]e have stated many times that federal habeas
corpus relief does not lie for errors of state law....  [W]e

reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (internal quotations and citation omitted); see also Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("[w]e... acknowledge our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); Varela v. Marshall, 520 F. Supp. 2d 471, 477 (S.D.N.Y. 2007) ("the Court notes that state evidentiary rulings are generally a matter of state law and not subject to habeas review").  Thus, "[i]n order to prevail on a claim that an evidentiary error deprived [a] defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial...." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)).


     Here, the audio and video tapes were properly authenticated before they were admitted.  At trial, each time an audio or video tape was introduced, the respective witness

testified that the exhibit fairly and accurately contained what was said and observed. (Trial Transcript 68-70, 73-75, 124, 144, 186-188, 202-203, 218-219). Petitioner has not established the inadequacy of these authentications or that any error in authentication undermined the fundamental fairness of his trial.

**Petitioner Has Not Established His Actual Innocence**

Finally, Petitioner raises a claim of actual innocence, which he also raised in his NYCPL § 440 motion. A petitioner may raise a claim of "actual innocence" to overcome the procedural bar to his claims. See Schlup v. Delo, 513 U.S. 298, 315 (1995) (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)). To make this showing, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). This means that he "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. "'Actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

39

As in his NYCPL § 440 motion, Petitioner fails to allege any facts in support of his claim of innocence beyond merely stating it.  This is insufficient to support his claim.

**Conclusion**

For the foregoing reasons, Brown's habeas corpus petition is denied.

It is so ordered.

New York, NY
August 2 5, 2011

ROBERT W. SWEET
U.S.D.J.

40